UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNA MCMAHAN, <br><br> Plaintiff, <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Case No. 11-cv-63-L(BLM) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. 16]** |

On January 12, 2011, Plaintiff Suzanna McMahan commenced this action against Defendants United Healthcare Insurance Company ("UHC") and Farmers Group, Inc. Medical Plan ("Farmers") seeking declaratory judgment and injunctive relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a), (e), (f), and (g). This action arises from UHC's decision to deny Plaintiff's request for health benefits (obesity surgery). Defendants now move for summary judgment. (Doc. 16.) Plaintiff opposes.

The Court found this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). (Doc. 23.) For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment.

//

## I. BACKGROUND[1]

### A. The Summary Plan Description ("SPD")

Plaintiff is an employee of Farmers Insurance Exchange, and in 2010, she was a participant in Farmers' Welfare Benefit Plan ("Plan"), an employee welfare benefit plan regulated by ERISA. (JSUF ¶¶ 1–2.) The Plan is self-funded by Farmers. (*Id.* ¶ 3.)

The SPD,[2] effective January 1, 2010, designates Farmers as both the Plan Administrator and Plan Sponsor, and UHC as the Claims Administrator. (SPD 1, 93, 100; JSUF ¶¶ 3–4.) It states that Farmers and UHC have the "sole and exclusive discretion" to: (1) "interpret Benefits under the Plan"; (2) "interpret the other terms, conditions, limitations and exclusions of the Plan, including this SPD and any Riders and/or Amendments"; and (3) "make factual determinations related to the Plan and its Benefits." (SPD 88.) Farmers and UHC may also "delegate this discretionary authority to other persons or entities that provide services in regard to the administration of the Plan." (*Id.*)

Section 6 of the SPD provides Additional Coverage Details, supplementing the Plan Highlights contained in Section 5. (SPD 22.) This section includes covered health services for which the Plan pays Benefits, and covered health services that require the participant to notify Personal Health Support before receiving them as well as any reduction in Benefits that may apply. (*Id.*) One of the covered health services listed under Section 6 is Obesity Surgery. (*Id.* at 33.) "The Plan covers surgical treatment of obesity provided by or under the direction of a Physician when all of the following are true:

- you have a minimum Body Mass Index (BMI) of 40; or
- you have documentation from a Physician of a diagnosis of morbid obesity for a

---

[1] Some of the following factual background is taken from the parties' Joint Statement of Undisputed Facts ("JSUF"). (Doc. 25-7.) Even though the JSUF is attached to Defendants' Reply, it was signed by counsel for both parties.

[2] The operative SPD—also referred to as the 2010 SPD—is attached as Exhibit A to the Declaration of Patricia Wojcik. (Doc. 16-3.) References to the SPD in this Order will be to the original page numbers and not the subsequently added Bates-stamped page numbers.

          minimum of five years;

- you are over the age of 21; and
- the surgery is performed at a Network Hospital by a Network surgeon even if there are no Network Hospitals near you."

(SPD 33.)

Section 9 of the SPD sets forth the Claims Procedures, including the options available to plan participants following the denial of a claim and procedures to file a formal appeal. (SPD 62–68.) The SPD gives participants the option to call UHC following the denial of a claim before requesting a formal appeal. (*Id.* at 64.) If a participant wishes to appeal a denied pre-service request for Benefits or post-service claim, then the participant is instructed to submit an appeal in writing to UHC. (*Id.*) UHC then conducts a "full and fair review" of the appeal. (*Id.* at 65.) If unsatisfied with the first-level-appeal decision, the participant "[has] the right to request a second level appeal from UnitedHealthcare." (*Id.*) "UnitedHealthcare's decision will be final." (*Id.*) Under Section 9, UHC is responsible for assessing requests for Benefits and rendering decisions for all levels of appeal. (*Id.* at 65–68.)

        **B.**    **Plaintiff's Request for Pre-Approval of Obesity Surgery**

On June 24, 2010, Plaintiff requested pre-approval for obesity surgery from UHC. (JSUF ¶ 5.) On July 7, 2010, UHC denied the request on the grounds that Plaintiff failed to meet all four of the criteria listed for coverage for the surgery. (*Id.* ¶ 7; Wojcik Decl. Ex. C.) Specifically, UHC found that Plaintiff did not have documentation from a physician of a diagnosis of morbid obesity for a minimum of five years. (Wojcik Decl. Ex. C.) UHC based its denial on the following language in the SPD:

> The Plan covers surgical treatment of obesity provided by or under the direction of a Physician when all of the following are true: you have a minimum Body Mass Index (BMI) of 40; or you have documentation from a Physician of a diagnosis of morbid obesity for a minimum of five years; you are over the age of 21; and the surgery is performed at a Network Hospital by a Network surgeon even if there are no Network Hospitals near you.

(Wojcik Decl. Ex. C.)

After UHC denied her request, Plaintiff formally appealed.  On August 10, 2010, Plaintiff submitted a first-level appeal to UHC.  (JSUF ¶ 9.)  She argued that the obesity surgery should be covered because she had a BMI over 40, and thus, she met the SPD's first requirement for surgery pre-approval.  (Wojcik Decl. Ex. D.)  However, on August 27, 2010, UHC upheld the denial of benefits for obesity surgery on the grounds that Plaintiff failed to meet Criterion 2—"Documentation from a Physician of a diagnosis of morbid obesity for a minimum of five years"—for obesity surgery.  (Wojcik Decl. Ex. E.)  Dr. Stephen Lincoln, M.D. reviewed the appeal, and reached that conclusion after reviewing additional clinical information.  (*Id.*)

On October 18, 2010, Plaintiff submitted a second-level appeal to UHC.  (JSUF ¶ 13.)  Plaintiff again contended that the SPD requires that only one of the first two criteria need to be satisfied to qualify for bariatric (obesity) surgery.  (Wojcik Decl. Ex. F.)  She also explained that a UHC Customer Service Representative advised her that "it was clear [she] qualified for the surgery based on the language and stated that [the request] had been denied by mistake."  (*Id.*)  That representative later contacted Plaintiff and stated that the policy was "written incorrectly," should have stated "and" after Criterion 2, and that the company was in the process of trying to have the language changed.  (*Id.*)  Plaintiff also stated in her second-level appeal that she spoke with a UHC Customer Service Supervisor, Customer Service Manager, and Business Manager.  (*Id.*)  All three representatives acknowledged to her that the policy "clearly shows" the word "or," and that, at the time, UHC was "in the process of changing the language."  (*Id.*)

Eventually, UHC once again upheld its denial of Plaintiff's request for pre-approval for obesity surgery.  (JSUF ¶ 15.)  On November 5, 2010, UHC sent Plaintiff a letter explaining that her request for obesity surgery is not a covered benefit because, "based upon the clinical information provided for this review, the specific requirement for [] Documentation from a Physician of a diagnosis of morbid obesity for a minimum of five years has not been met."  (Wojcik Decl. Ex. G.)  The letter also noted that there is a "typographic error in the Benefit Plan document of which Farmer's [sic] is aware" and "[t]he word 'or' should be 'and' in the section about coverage of bariatric [obesity] surgery."  (*Id.*)  Dr. Brian Rose, D.O., reviewed this second-level appeal.  (*Id.*)

On November 15, 2010, UHC amended the 2010 SPD to delete the word "or" after the first criterion for obesity surgery. (Pellymounter Decl. ¶ 14.) The prefatory language requiring that all criteria be met to qualify for the surgery remained the same. (*Id.*)

On November 23, 2010, Plaintiff contacted a Farmers Employee Benefits Manager, expressing her dissatisfaction with the denial of her appeal, and informing Farmers that she had incurred $600.00 in expenses in connection with her request for pre-approval of obesity surgery. (Pellymounter Decl. ¶ 12.) In response, the Employee Benefits Manager contacted UHC to confirm whether Plaintiff had incurred the identified expenses, and to request that she be reimbursed for these expenses by UHC. (*Id.* ¶ 13.)

On January 12, 2011, Plaintiff commenced this action against Defendants, seeking declaratory judgment that the requested obesity surgery be covered, and equitable relief requiring Defendants to pay for the same. She also seeks attorneys' fees and costs. Defendants now move for summary judgment. Plaintiff opposes.

## II.   LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts

will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

//
//
//
//

## III. DISCUSSION

### A. The Abuse of Discretion Standard of Review Applies.

#### 1. Standard of Review

"[A] denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "Where the plan vests the administrator with the discretionary authority to determine eligibility for benefits, . . . a district court may review the administrator's determination only for an abuse of discretion." *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1993) (citing *Firestone*, 489 U.S. at 115; *Eley v. Boeing Co.*, 945 F.2d 276, 278 (9th Cir. 1991)) (abrogated on other grounds). "[T]he presumption of de novo review can be overcome only when a plan's reservation of discretion is unambiguous." *McDaniel v. The Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir. 2000) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1088-89 (9th Cir. 1999) (en banc)).

An ERISA plan that does not grant any power to construe the terms of the plan is insufficient to confer discretionary authority on the administrator. *See, e.g., Ingram v. Martin Merietta Long Term Disability Income Plan*, 244 F.3d 1109, 1112 (9th Cir. 2001) (applying a *de novo* standard of review when plan provisions merely identified the plan administrator's tasks, but granted no power to interpret the plan). But in cases where the plan bestows on the administrator the responsibility to interpret the terms of the plan and to determine eligibility for benefits, the Ninth Circuit has found it sufficient to grant discretionary authority. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (finding a plan giving the administrator "full and final" authority and cautioning that such authority "rest exclusively" with the plan administrator unambiguous).

Here, Farmers is the Plan Administrator and UHC is the Claims Administrator under the SPD. The Plan unambiguously confers discretionary authority upon both Farmers and UHC. (*See* SPD 88.) As laid out above, both have "sole and exclusive discretion" to: (1) "interpret Benefits under the Plan"; (2) "interpret the other terms, conditions, limitations and exclusions of

the Plan"; and (3) "make factual determinations related to the Plan and its Benefits." (*Id.*) Both also may "delegate this discretionary authority to other persons or entities." (*Id.*) Therefore, the appropriate standard of review is abuse of discretion. *See Firestone*, 489 U.S. at 111 (plan granted discretion if administrator has power to construe uncertain terms in the plan); *Abatie*, 458 F.3d at 965.

### 2.     Conflict of Interest

Courts apply the abuse-of-discretion standard even if there are egregious conflicts of interest. *Abatie*, 458 F.3d at 965. "If a benefit plan gives discretion to an administrator or fiduciary who is *operating under a conflict of interest*, that conflict must be *weighed as a factor* in determining whether there is an abuse of discretion." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (emphasis in original) (internal quotation marks omitted). Consideration of the conflict can "affect judicial review," thus a court must consider the conflict whenever it exists, and must temper the abuse-of-discretion standard with skepticism "commensurate" with the conflict. *Abatie*, 458 F.3d at 959; *see Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009). "The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Abatie*, 458 F.3d at 968. The existence of a structural conflict of interest is more important where "circumstances suggest a higher likelihood that it affected the benefits decision." *Glenn*, 554 U.S. at 117. Other factors relevant to this determination are whether the administrator "has a history of biased claims administration"; and whether the administrator "has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.*

"[A]n insurer that acts as both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict of interest." *Abatie*, 458 F.3d at 965 (citing *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999). As Plaintiff points out,

Farmers is both the Plan Administrator and funds the Plan. (Pl.'s Opp'n 11:23–24.) Thus, there is a structural conflict of interest. *See Abatie*, 458 F.3d at 965. However, that is only one factor in determining whether there was an abuse of discretion. *See Glenn*, 544 U.S. at 111. The Court may consider extrinsic evidence outside the administrative record "to decide the nature, extent, and effect on the decision-making process of any conflict of interest." *Abatie*, 458 F.3d at 970. The "decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established." *Id.* (citing *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 57 (1st Cir. 1999)).

Plaintiff provides extrinsic evidence in the form of email communications that purportedly shows that Farmers directed the determination to deny Plaintiff's appeal. (Pl.'s Opp'n 13:12–16 (citing Green Decl. Ex. 1).) The email communications show that UHC informed Farmers that it would deny Plaintiff's second-level appeal and inquired whether Farmers wanted to make an exception. (Green Decl. Ex. 1.) However, the email communications do not show that Farmers directed any determination. Rather, as Defendants point out, the email communications show that Farmers, given that UHC would handle the claim no differently, did not see the need to intercede and request an exception. (*See id.*) That also suggests that the final decision remained with UHC. Thus, the email communications do not show that the conflict influenced UHC's decision-making here.

Even though Farmers has a structural conflict of interest with respect to the Plan, the Court will not afford the conflict significant weight. A court may weigh a conflict more heavily where the conflict informs the eligibility decision. *Abatie*, 458 F.3d at 967-68. However, a conflict of interest reaches the "vanishing point" where an administrator "has taken active steps to reduce potential bias and to promote accuracy." *Glenn*, 554 U.S. at 118.

Here, Farmers played no role in the decision to deny Plaintiff's request for obesity surgery. Rather, Farmers delegated such responsibilities to UHC, and thus, Farmers took active steps to reduce bias by walling itself off from eligibility decisions. *See Russell v. Comcast Corp.*, No. C08-309Z, 2009 WL 666592, at *6 (W.D. Wash. Mar. 10, 2009) (finding that the plan administrator delegated the responsibility to review appeals to the claims administrator even

9

11cv63

though the plan granted both discretionary authority). Section 9 of the SPD shows that UHC is responsible for overseeing all claims procedures, conducting a "full and fair review," and rendering "final" decisions for all levels of appeal. (SPD 65–68.) And the SPD directs participants, such as Plaintiff, to contact *only* UHC to request benefits and pursue appeals. (*Id.*) In fact, Section 9 does not grant Farmers any responsibilities for assessing claims. (*See id.* at 62–68.) And finally, the structural conflict is unaccompanied by any evidence of malice, self-dealing, or a parsimonious claims-granting history. Accordingly, the Court will apply a low degree of skepticism in its abuse-of-discretion analysis.[3] *See Abatie*, 458 F.3d at 959, 968.

### B. Defendants Did Not Abuse Their Discretion.

Under the abuse-of-discretion standard, an administrator's decision to deny benefits must be upheld if it is based upon a reasonable interpretation of the plan's terms and was made in good faith. *McDaniel*, 203 F.3d at 1113. The question the court must ask is not "whose interpretation of the plan document is most persuasive, but whether the . . . interpretation is unreasonable." *Canseco v. Constr. Laborers Pension Trust*, 93 F.3d 600, 606 (9th Cir. 1996) (citations and internal quotation marks omitted). In making this decision, the court is permitted to review only the evidence presented to the administrator. *Banuelos v. Constr. Laborer's Trust Funds for S. Cal.*, 382 F.3d 897, 904 (9th Cir. 2004); *Taft v. Equitable Life Assurances Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1993).

The test for abuse of discretion in a factual determination (as opposed to a legal error) is whether "[the court has been] left with a definite and firm conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011)

---

[3] Beyond asserting that a conflict of interest exists, Plaintiff's only supporting evidence is that she was denied a full and fair review of her appeal because Dr. Lincoln, specializing in thoracic and cardiovascular surgery, and Dr. Rose, specializing in family medicine, were not specialists in bariatric surgery. (Pl.'s Opp'n 13:19–14:24.) Because the only medical question Dr. Lincoln and Dr. Rose reviewed in Plaintiff's appeals were whether her medical records indicated whether she had a history of morbid obesity for a minimum of five years, and because this determination requires no specialized medical training, Plaintiff's argument lacks merit.

(internal quotation marks omitted).  To make such a determination, the Court must decide whether the administrator's decision was illogical, implausible, or without support in inferences that could reasonably be drawn from the record.  *Id*.  "[A]pplying [this] highly deferential standard of review does not mean that the plan administrator will prevail on the merits." *Id.* at 674-75 (quoting *Conkright v. Frommert*, — U.S. —, 130 S. Ct. 1640, 1646, 1651 (2010)) (internal quotation marks omitted).  "What deference means is that the . . . administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Id.* at 675.

The sole remaining issue here is whether UHC's interpretation of the Plan is reasonable.  In its November 5, 2010 decision, UHC explained that "[t]here is a typographic error in the Benefit Plan document of which Farmer's [sic] is aware," and "[t]he word 'or' should be 'and' in the section about coverage of bariatric [obesity] surgery." (Wojcik Decl. Ex. G.)  In the prior decision issued on August 27, 2010, UHC implicitly reached the same conclusion. (Wojcik Decl. Ex. E.)  In that decision, UHC explained that "[t]he specific criteria in the SUMMARY PLAN DESCRIPTION and amendments noted in the CLARIFICATION OF BENEFITS PLAN GRID requires" all four criteria.  (*Id.*)  Neither party provides the Clarification of Benefits Plan Grid.  Rather, both parties rely on the plain language of the SPD to support their respective positions.

Specifically, Defendants argue that there was a reasonable basis to deny coverage for Plaintiff's requested obesity surgery, and thus, UHC did not abuse its discretion. (Defs.' Mot. 10:8–16.)  They support that argument by directing the Court to the plain language of the SPD, which they contend that even with the erroneously included "or" after the first criterion for BMI, makes clear that obesity surgery is not covered unless all of the identified criteria are met. (*Id.*)  Plaintiff responds that Defendants are mistaken.  She argues that UHC's interpretation was unreasonable, primarily because UHC failed to apply the plain language of the SPD. (Pl.'s Opp'n 15:24–16:3.)  The Court agrees with Defendants.

The prefatory language in the SPD for Obesity Surgery states that "[t]he Plan covers surgical treatment of obesity provided by or under the direction of a Physician when **all** of the following are true." (SPD 33 (emphasis added).)  Then the SPD goes on to list the four criteria,

but after the first criterion, there is a peculiarly placed "or," and after the third criterion, there is a more customarily used "and." (*Id.*)  Given the prefatory language and the peculiar placement of the "or," the Court cannot conclude that UHC's interpretation of the Plan requiring all four criteria for obesity surgery is illogical, implausible, or without support in inferences that could be reasonably drawn from the plain language of the SPD.[4]  *See Salomaa*, 642 F.3d at 676.  Rather, based on the plain language of the SPD, UHC's interpretation is reasonable, and thus it did not abuse its discretion in denying Plaintiff's request for pre-approval for obesity surgery.[5]  *See id.* at 675.

As a lingering issue, Plaintiff also argues that her interpretation of the Plan should be adopted because she is a plan participant and case law requires Defendants to bear the burden of for inaccuracies when Plaintiff relies upon it to her detriment.  (Pl.'s Opp'n 21:9–22:3.)  However, that argument does not address whether UHC's interpretation of the Plan is reasonable, and thus, is outside the scope of review.  Setting that aside, Plaintiff only requested pre-approval for the surgery, which was denied.  (Wojcik Decl. Ex. C.)  There is no evidence before the Court that Plaintiff actually completed and payed for the obesity surgery herself.  Consequently, she did not bear any costs for surgery.  Furthermore, Defendants are in the process of reimbursing all expenses that Plaintiff incurred to obtain pre-authorization.

---

[4] Plaintiff further argues that, under the doctrine of *contra proferentem*, any ambiguity in the SPD must be construed against Defendants.  (Pl.'s Opp'n 22:6–8.)  The Ninth Circuit has rejected this argument.  *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554 (9th Cir. 1995).  Specifically, the *Winters* court held that, "the rule of *contra proferentem* is not applicable to self-funded ERISA plans that bestow explicit discretionary authority upon an administrator to determine eligibility for benefits or to construe the terms of the plan."  *Id*.  As determined above, the SPD grants explicit discretionary authority upon UHC to determine eligibility for benefits and to construe the terms of the Plan.  Therefore, following the Ninth Circuit, the Court also rejects this argument.

[5] Plaintiff also argues that UHC's decision to deny benefits created an impossibility.  (Pl.'s Opp'n 16:18–20:28.)  To support this argument, Plaintiff relies on definitions provided by various medical organizations, internal correspondences, and UHC's Medical Policy on Bariatric Surgery.  However, all of this information is outside the scope of the Court's review.  In particular, the Medical Policy on Bariatric Surgery that Plaintiff provides is dated January 1, 2012, which means it would have been impossible for UHC to have even considered that document when considering Plaintiff's request in November 2010.  Therefore, the Court rejects Plaintiff's impossibility argument.

(Pellymounter Decl. ¶ 13.) Therefore, any detriment caused by Plaintiff's reliance on the "or" typographical error has already been, or will be, born by Defendants. Thus, this argument is without merit.

## IV. CONCLUSION & ORDER

For the forgoing reasons, the Court **GRANTS** Defendants' motion for summary judgment. (Doc. 16.) The Clerk of the Court is directed to enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED: September 13, 2012

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. BARBARA LYNN MAJOR
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL